## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND
### (Nothern Division)

| | |
|---|---|
| **JAMIE M. BENNETT**<br>8 Creek Side Court<br>Middle River, Md. 21220<br><br>**and**<br><br>**JOHN P. FITCH**<br>8 Creek Side Court<br>Middle River, Md. 21220<br><br>**PLAINTIFFS**<br><br>**v.**<br><br>**THE ST. PAUL'S SCHOOLS INC. d/b/a**<br>**The St. Paul's School for Girls**<br>**Serve Resident Agent:**<br>Kate McKew<br>11232 Falls Road,<br>Brooklandville, Maryland 21022<br><br>**and**<br><br>**ERENI MALFA**<br>**c/o The St. Paul's School for Girls**<br>**Serve Resident Agent:**<br>Kate McKew<br>11232 Falls Road,<br>Brooklandville, Maryland 21022<br><br>**and**<br><br>**CHRISTINA FERRENS**<br>**c/o The St. Paul's School for Girls**<br>**Serve Resident Agent:**<br>Kate McKew<br>11152 Falls Road,<br>Brooklandville, Maryland 21022<br><br>**and** | **Civil Action No.**<br><br>**JURY TRIAL DEMANDED** |

**SABRINA MURRAY**
**c/o The St. Paul's School for Girls**
**Serve Resident Agent:**
**Kate McKew**
11152 Falls Road,
Brooklandville, Maryland 21022

**and**

**KATHERINE GRACE PORTER**
428 Range Road
Towson, Md. 21204

**and**

**SARA PORTER**
428 Range Road
Towson, Md. 21204

**and**

**JUDY HECK**
111 Railroad Avenue
Glyndon, Md. 21071

**and**

**GRETA HECK**
111 Railroad Avenue
Glyndon, Md. 21071

**DEFENDANTS**

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Jamie Bennett and John Fitch bring this action against the Defendants The St.

Paul's Schools, Inc, d/a/a St. Paul's School for Girls ("SPSG").  For their causes of action,

Plaintiffs allege as follows:

## II. <u>THE PARTIES</u>

1.   Jamie Bennett is an adult resident of Maryland residing at 8 Creek Side Court, Middle River, Maryland 21220 and the mother of  a child who, at the time of the events alleged in this Complaint, was a minor and a "child and a student with a disability." That child shall be referred to herein as A.B. Ms. Bennett entered into a series of enrollment and other contractual agreements with SPSG for the education of her minor daughter. Ms. Bennett is an attorney in active practice, and has been a member of both the bar of the District of Columbia and Maryland in good standing for many years.

2.   John Fitch is also an adult resident of the state of Maryland residing at 8 Creek Side Court Middle River, Md. 21220 and the father of the minor child involved in this case. Mr. Fitch entered into enrollment and other contractual agreements with SPSG for the education of his minor daughter. Mr. Fitch has been a sworn law enforcement officer in the State of Maryland for decades, and is currently employed in that capacity by the Department of Defense. Mr. Fitch's current empolyment subjects him to periodic background checks which include questions and interviews about his reputation for honesty.

3.   The St. Paul's Schools, Inc. is a Maryland Corporation formed under the laws of Maryland having its principal office located at 11152 Falls Road, Brooklandville, Maryland 21022, being the same corporation previously known as Hillside Coordination, Inc.  The St. Paul's Schools, Inc. owns and operates four different school entities, including the St. Paul's School for Girls ("SPSG"). SPSG is an Episcopal private day school for girls located in Brooklandville, Maryland, which has as its professed mission, *inter alia*, the education of girls in "in an environment of absolute love and support, founded on principles of inclusion and compassion. . . ."

3

4.   Christina Ferrens is an employee of The St. Paul's Schools who works from its location at 11152 Falls Road, Brooklandville, Maryland 21022 and at all times relevant to this action was the Head (principal) of the St. Paul's School for Girls Upper (high) School.

5.   Ereni Malfa is an employee of Defendant The St. Paul's Schools who works from SPSG's location at 11152 Falls Road, Brooklandville, Maryland 21022 and for the period of this Complaint which covers the allegations of the Complaint set forth at Paragraphs 13-84, was the Head of the St. Paul's School for Girls.

6.   Sabrina Murray is an employee of Defendant The St. Paul's Schools who works from SPSG's location at 11152 Falls Road, Brooklandville, Maryland 21022 and for the period this Complaint which covers the allegations of the Complaint set forth at Paragraphs 13-84 was the Dean of Students at the St. Paul's School for Girls.

7.   Katherine ("Kate") Grace Porter ("Porter") is an adult resident of the state of Maryland and was a student at the St. Paul's School for Girls until her graduation on June 11, 2021. Porter turned 18 years of age on November 28, 2020.  Ms. Porter's legal residence is 428 Range Road, Towson, Md. 21204. Porter attended SPSG as the daughter of an employee, receiving a deeply discounted, tax-free tuition benefit, and Porter's parents paid a small fraction of the full tuition cost paid by the Plaintiff Parents. Kate Porter's parents Sara and Brett Porter entered into an enrollment contract with SPSG on her behalf, which incorporated the Student Handbook by reference, a contract that Kate Porter accepted when she turned 18 in November 2020 when she failed to disaffirm the contract within a reasonable time of reaching adulthood.

8.   Sara Porter is an adult resident of the state of Maryland, the adoptive mother of Katherine Grace Porter, and a teacher in the employ of the Defendant, The St. Paul's Schools, Inc. who works from The St. Paul's School location at 11152 Falls Road, Brooklandville, Maryland 21022. Mrs. Porter resides at 428 Range Road, Towson, Md. 21204.

9.   Greta Heck ("Heck") is an adult resident of the state of Maryland and was a student at St. Paul's School for Girls through her graduation on June 11, 2021. Greta Heck resides at 111 Railroad Avenue, Glyndon, Md. 21071. Greta Heck turned 18 years of age on March 11, 2021. Greta Heck's parents Judy and Kent Heck entered into an enrollment contract with SPSG on her behalf, which incorporated the Student Handbook by reference, a contract that Greta Heck accepted when she failed to disaffirm the contract within a reasonable time of reaching the age of 18.

### III.   <u>JURISDICTION AND VENUE</u>

10. This Court has jurisdiction over this case under 28 U.S. C. § 1331 because this Complaint arises under federal statutes including the American with Disabilities Act and Section 504 of the Rehabilitation. The Court has supplemental jurisdiction over the state law claims in this case. 28 U.S.C. 1367.

11. For the period from on or about April 4, 2020 to on or about September, 2021, part of the time period covered by this Complaint, the Defendant The St. Paul's School is and was the recipient of a $4.67 million Paycheck Protection Program loan from the Small Business Administration which required the School to comply with federal civil rights laws, including but not limited to Section 504 of the Rehabilitation Act.

12.   Additionally at all times relevant to this Complaint, SPSG is a  Section 501(c)(3) religious school which is exempt from federal taxation and based upon that status was a recipient of federal financial assistance during the years during which the Plaintiffs' daughter was enrolled there.

13. Venue is appropriate in this district pursuant to 28 U.S.C.§1391 because all parties are residents of this district and the corporate defendant The St. Paul's School, Inc., has its primary place of business in this district. All of the conduct alleged below occurred in this district.

## IV. <u>FACTUAL ALLEGATIONS</u>

14. SPSG's promotional material, SPSG's enrollment contract and SPSG's Student-Parent Handbook which is incorporated into that enrollment contract by reference provide that "physical or emotional injury to others . . . *will not be tolerated.*" (emphasis added).

15. Further the school Student- Handbook which is incorporated into the enrollment contract by reference provides that "every individual in the SPSG community is to be treated with sensitivity and respect and is entitled to work and learn without fear of intimidation, humiliation and/or degradation from unwanted and unacceptable behavior, including but not limited to, comments, images and technology."

16. SPSG's Policy on Bullying, Harassment, and Intimidation expressly "applies to relations between adults, between students and/or between adults and students, regardless of the individual's gender and/or age" and prohibits students from "engaging in any form of bullying, harassment, or intimidation."

17. All parents/guardians of students enrolled at SPSG must sign a yearly enrollment contract and agree to abide by the SPSG's "rules and regulations" including the SPSG Upper School Student-Parent Handbook ("Handbook") incorporated into every enrollment contract and containing SPSG's Honor Code; Policy on Bullying, Harassment, and Intimidation; and Essential School Rules.

18. The Student-Parent Handbook provides that: "At the beginning of the year, each student and her parent(s)/guardian(s) are expected to read and understand the Upper School Parent/Student Handbook."

19. Further, the Handbook requires that each student annually sign the Honor Agreement described in the Handbook.

20. SPSG also requires all students, and their parents, to sign an Acceptable Use Policy agreement ("AUP") at the beginning of each academic year. The AUP states as follows "students will be held accountable by SPSG for online behaior, on or off-campus, whether through the school or a personal network, before, during, or after the school day which reflects poorly on the school or in any way violates the standards for conduct established by SPSG.

21. In addition, on and off campus onlines behavior used to harass any individual including but not limited to bullying, intimidation and discrimination should be reported immediately to a faculty member, and will lead to disciplinary prosecution under Maryland House Bill 396 [the Maryland Misuse of Interactive Computer Services Act]."

22. The AUP agreement advises that each student is responsible for "using social media, cell phones, and person or school email address in a mmaner consistent with school rules and expectation;" "pornography and profanity," "bullying, derogatory, harassing and intimidating language;" and "acting in accordance with all Maryland and United States laws at all times. The consequences include "disciplinary action up to and including expulsion."

23. The AUP agreement advises students that if they violate the AUP they "will" be subject to discipline.

24. In addition, the AUP agreement states that "in accordance with Maryland's Misuse of Interactive Computer Service," students are prohibited from using "interactive computer service" to maliciously engaged [sic] in a course of conduct that inflicts serious emotional distress to a minor or places a minor in reasonable fear of death or serious bodily injury . . ." The AUP indicates violation of Maryland's Misuse of Intereactive Computer Services law is a misdemeanor, punishable by imprisonment and a fine.

25. All of the Individual Defendants who had students enrolled at SPSG at the time of the Plaintiffs' daughter's enrollment including Ereni Malfa, Christina Ferrens, Katherine Porter, Sara

Porter, Greta Heck and Judy Heck signed this policy for each academic year, committing themselves to comply with the AUP agreement.

26. The Plaintiffs and their daughter signed the AUP agreement for each academic year of her enrollment from 2017-2021.

27. The Faculty Handbook sets forth Standards of Conduct for faculty and administrators requiring "[e]mployees who learn or suspect that a student is being harassed, bullied or hazed should . . report such information to the Heads of School or an administrator *as soon as possible."* Defendant Sara Porter agreed to these Standards her role as faculty at the St. Paul's Lower School.

28. The Faculty Handbook defines "bullying" to include "cyberbullying" which it further defines as "sending or posting of harmful and/or cruel text or images via the internet, cell phones, chat rooms, email, instant message, or any other digital communication devices."

29. Sara Porter's actions, as an employee of The St. Paul's Schools were governed by the Faculty Handbook.

30. The SPSG Enrollment Contract also contains a provision which permits the School "To require the withdrawal of any student if it determines withdrawal to be in the best interests of the Student or the School. Reasons may include but are not limited to  . . .behavior by the parent, guardian or Student that is detrimental or disruptive to the School."

31. No student is obligated to enroll in SPSG, but when they are enrolled, they are required to comply with the Student-Parent Handbook, and the AUP agreement and any other essential school rules and policies, including the Honor Agreement which obligates them to tell the truth at all times with respect to matters relating to their conduct at SPSG.

32. All states in the United States, including Maryland, have adopted laws or policies against bullying. Maryland's law, like many others defines bullying as intentional conduct (verbal, physical, or written conduct, including electronic communications) that create a hostile

educational environment, or interfere with a student's educational benefits, opportunities, performance and/or physical or psychological well-being.

33. Maryland has also enacted the Misuse of Interactive Computer Service Act, also known as Grace's Law, which criminalizes the use of an "interactive computer service" such as cell phones and text messages to maliciously engage in a course of conduct that inflicts serious emotional distress to a minor or places a minor in reasonable fear of death or seriously bodily injury.

34. On or about August 29, 2017, the Plaintiffs' daughter, who will be referred to herein as A.B. matriculated at SPSG as a member of the high school freshman class.

35. On or shortly after A.B. began classes at SPSG, Ms. Bennett provided the school with a copy of an evaluation performed by an educational expert, which disclosed that A.B. had a learning disability and also suffered from an anxiety disorder.

36. In or around September 2017, the Plaintiff Parents entered into an Individualized Education Program ("IEP") agreement with SPSG which addressed accommodations for A.B.'s learning disability and anxiety disorder. At all times relevant to the Complaint, the Defendant School and its employees were aware of A.B.'s disability and the existence of her IEP.

37. The Plaintiff Parents specifically chose SPSG for their daughter instead of a public school in Baltimore County because they wanted her to continue her faith-based education at a school that was committed to strong social values and racial diversity, prohibited bullying and harassment, and had rigorous academic standards.

38. The Plaintiffs understood from St. Paul's promotional materials, its website, the school Handbook, the AUP, the Enrollment Contract, and specific representations by admissions representatives that were solicited by the Plaintiff Parents because A.B. had been harassed at her

previous school, that SPSG fully embraced the values set forth in those documents and advertisements to the public.

39. The Plaintiff Parents were led to believe and reasonably did believe that the teachers and administrators at SPSG as well as other students and their parents assumed a contractual duty to protect their daughter, A.B. from physical and emotional harm, including from bullying, harassment and/or intimidation through the Enrollment Contract, Handbook, and AUP.

40. In total, in reliance upon the aforesaid representations and in order to better protect their daughter from bullying and harassment, the Plaintiffs have paid approximately one hundred fourteen thousand dollars ($114,000) in tuition to SPSG.

41. Because of the School's and the individual Defendants' failure to keep their respective promises not to engage in bullying, harassment, or intimidation and not to tolerate physical or emotional harm to students, the Plaintiff's expectations regarding their contract with the School were completely defeated.

42. Beginning in September 2017, A.B. became friends with the Defendant Students, Kate Porter and Greta Heck, along with Niya Robinson and Br'ael Taylor through Defendant Heck.

43. Beginning in the fall of 2019, Defendant Porter and the other Defendant Students began to bully A.B. at the direction of Katherine Porter, the daughter of a teacher at SPS, because, inter alia, of a disagreement that A.B. and Katherine Porter had over a social engagement as to which Porter did not feel A.B. had shown her and her then-boyfriend, Conor McMahon, sufficient respect.

44. By way of example and without being exhaustive because of the extent, constancy and duration of the bullying: beginning in the fall of 2019 at Porter's direction, the Defendant students mocked A.B. for being clumsy and uncoordinated, mimicked A.B.'s gestures and gait, attacked A.B.'s weight and what she ate, frequently shouted at her in public to "shut up," mocked her laugh

and the way she ate, made fun of her for talking "too loudly," made fun of A.B. as being "too sensitive," taunted A.B. for being "wealthy" and "materialistic,"  and mocked A.B.. for participating in school clubs and programs and her desire to achieve good grades and gain admission to a competitive college.

45. As relevant here, and without being exhaustive, Defendants Katherine Porter and Greta Heck, along with other students not named in this Complaint, sent text messages in a group chat during school hours, sent and read in the presence of A.B., the Plaintiffs' daughter was referred to by her "friends" as "an ugly ass hoe[1]," and an "Ass Hat[2]" A.B.'s "friends" were sending texts to each other, again, during school hours and in her presence saying "Bitch shut the fuck up" and "nobody likes u," "we don't like u stop talking," "I want her to dissolve," "Fuck U Annie" and saying in response to A.B. receiving the gift of a new car from her parents that "when I get my license there will be an anonymous hit and run . . . and maybe eggs and slashed tires" to which one of the girls responded "Hahahaha." These text messages violated SPSG's AUP agreement.

46. Even after the girls finally ostracized A.B. from their friend group in mid-January 2020 they continued to exchange angry text messages saying it was "disgusting" that A.B. had been selected to go to the Student Government Leadership Institute," and when A.B. gave her senior speech – <u>eight full months later</u> – Kate Porter texted about how "funny" the speech was.

47. One of the members of the group, Br'ael Taylor, posted a sign on her VSCO account saying "F*** Fake Friends" directed at A.B. on or about January 15, 2020.

48. Defendant Katherine Porter reposted the  sign referenced in Paragraph 56 on her VSCO account on or about January 15, 2020.

---

[1]  Whore.

[2]  "Ass Hat" is defined by the Oxford Dictionary as "a stupid or contemptible person."

49. From on or about January 17, 2020 to March 2020, Plaintiff Bennett informed Defendant Sara Porter – a teacher at St. Paul's Lower School that her daughter was being bullied by Katherine Porter and others and that her daughter had violated SPSG's AUP agreement.

50. In connection with those communications between Sara Porter and Ms. Bennett, and at Ms. Bennett's suggestion Sara Porter downloaded the above-referenced texts from her daughter's cell phone no later than February 2020.

51. Ms Bennett and Sara Porter reached an agreement in late February that Katherine Porter would apologize to the Plaintiffs' daughter for bullying her and self-report her bullying to the School.

52. Mrs. Porter reported this agreement to the School, writing an email to Ferrens on March 2, 2020, saying that "I reached out to Jamie Bennett to let her know that Kate would be writing [the Plaintiffs' daughter] an apology letter and that she will be coming to the school to discuss her role in the allegations."

53. Sara Porter again contacted the School on March 11, 2020 saying that she had apologized to the Plaintiffs and that Kate would be coming to the School to "discuss her role in the allegations made this week."

54. Sara Porter reneged on that agreement, upon information and belief, after recognizing from a review of her daughter's text messages that she had violated the SPSG AUP agreement, and could be subjected to expulsion, and possible criminal prosecution under Grace's Law.

55. Despite the fact that Sara Porter had the evidence of bullying in the form of the text messages quoted above, including evidence that implicated other students at SPSG in the bullying, she did not provide those messages to the school.

56. Although the Defendant SPSG administrators (Malfa, Ferrens and Murray) knew that Sara Porter had evidence implicating her daughter and other students in the bullying of the Plaintiffs' daughter, no one at the School ever asked Sara Porter for that evidence.

57. Sara Porter never disclosed these text messages, including the threats to slash A.B.'s tires and have "an accidental hit and run" to the School Administrators or to law enforcement even though these texts violate the AUP agreement and Grace's Law, the Maryland law prohibiting cyberbullying.

58. Further, Sara Porter did not tell the Plaintiffs about these messages, so they could take steps to protect their daughter.

59. On January 27, 2020, Ms. Bennett met with SPSG to discuss the bullying and harassment of her daughter and to find out what the school could do to ameliorate the situation.

60. In this meeting and in multiple, written communications to the school throughout this time period, Ms. Bennett described in detail the injurious conduct directed at her daughter that had occurred over the past months.

61. At the January 2020 meeting, Ferrens responded to those concerns by smiling, saying that this kind of bullying conduct described by Ms. Bennett at the January 27, 2020 meeting "happens all the time" at SPSG.

62. When Bennett expressed reluctance to file a formal complaint, Ferrens agreed that it would be difficult for A.B. because "if the other girls find out they may come up to A.B. and call her a bitch for complaining."

63. On February 21, 2020, Ms. Bennett, accompanied by Mr. Fitch, again met with the school. Ferrens and Murray were again present. Although at that meeting the Plaintiff Parents specifically

requested that SPSG punish the perpetrators and, at a minimum, that the school take steps to physically separate A.B. from the harassing students in classes.

64. Ferrens and Murray took no action to protect A.B. from the harassers. The only concrete step they took was to offer Ms. Murray – who later was the school official who told A.B. that she had not been "bullied" in May 2020 after the Plaintiff parents filed a formal grievance -- as a "safe adult" for A.B. to go to if harassment occurred again.

65. In or about March 2020, after efforts to work with the Defendant Parents to mitigate the effects of bullying failed, the Plaintiffs filed a formal complaint against Porter, Heck, and Robinson with the school based upon the aforementioned course of conduct and asked the school to discipline the harassers consistent with SPSG's promise that emotional injury and harassment like that experienced by A.B. would not be tolerated.

66. As noted SPSG took no action to discipline the bullies <u>despite having ready access to proof</u> that Kate did bully the Plaintiffs' daughter through Mrs. Porter.

67. Instead, SPSG decided to require the Plaintiffs to prove the bullying by submitting text messages or screenshots proving the bullying despite knowing that the Plaintiffs did not have access to such material.

68. Despite having access to text messages through their employee, Sara Porter, SPS told at least one of the parents of an alleged bully that the Plaintiffs' allegations were false.

69. The Plaintiffs were completely unaware of this defamatory statement until SPSG made disclosures about the defamatory statement on November 18, 2022 in pending state court litigation.

70. On or about May 7, 2020 the school responded to the Plaintiffs through Ms. Murray saying that the course of harassment and bullying that A.B. had endured for months was simply

the product of "social dynamics," and making it clear that the school would take no action against the offending students.

71. In its May 7, 2020 email informing the Plaintiffs' of the outcome of the School's investigation SPSG falsely represented that it had gone through the disciplinary process with the accused students when it is clear that the offending students were never interviewed about the allegations as required by the Schools disciplinary procedures or asked to produce text messages or posts about the Plaintiff's daughter.

72. Upon information and belief, SPSG did not want to discipline the daughter of one of its employees, and entered into an agreement with Sara Porter not to disclose the offending text messages so that the School could avoid such discipline.

73. Ms. Murray admitted in a deposition taken in a pending state court action that although the School did not dispute that the conduct described by the Plaintiffs had occurred, SPSG did not agree that it constituted bullying. Ms. Murray conceded that the conduct described would cause emotional injury to A.B.

74. Ms. Bennett addressed her concerns that SPSG had not acted to protect her daughter with the school's attorney Geoff Genthe in a telephone call that took place on May 7, 2020 after she received the aforementioned email from Ms. Murray.

75. During that telephone call Mr. Genthe contended that what happened to A.B. was a result of "social dynamics" and was not bullying and admitted that "the school *was unable to police* social vagaries" such as the harassment A.B. endured.

76. Genthe told Ms. Bennett during that phone call that she had no basis for suing SPSG and actually suggested that Ms. Bennett was interfering with the "healing" *of the bullies who had*

*harassed and injured A.B. for months,* presumably because Ms. Bennett had the audacity to complain about bullying to the school.

77. Ms. Bennett interpreted this as a direct threat against her daughter, who could potentially herself be disciplined or expelled for "interfering with the bullies' healing" under the Plaintiffs' contract with the school described above.

78. The Defendant SPSG's admission through its agent, Geoff Genthe, that the school's contractual promise to protect students from physical and emotional injury was false.

79. Beginning in or about 2019 Ferrens mocked A.B.'s learning disability and Ms. Bennett's efforts to ensure that A.B.'s IEP was followed, telling Ms. Bennett, when she requested enforcement of A.B.'s IEP with respect to a specific test in Spanish that Bennett "was just upset because A.B. did not receive an A" on the test.

80. In February 2020, at the same time that the Plaintiffs were complaining about the bullying of their daughter, Ferrens also made clear to the teachers at the school, including Whitney Schultz, A.B.'s English teacher that they were free to ignore A.B.'s IEP and Ms. Bennett's requests for accommodations for her daughter's disability.

81. After Ms. Bennett requested accommodations for her disability that would have made it easier for her to handle the workload in A.P. English from Ms. Schultz in February 2020, providing her with guidance from the United States Department of Education on that subject, Ms. Ferrens called Ms. Bennett a derogatory name and told Ms. Schultz to ignore the Plaintiffs' "demands."

82. Ferrens further made her hostility to the Fitch family clear when she instructed Sabrina Murray to falsely tell the Plaintiffs in early May, 2020 that the School had completed its disciplinary process with respect to the Fitch family complaints of bullying and to make efforts

to discourage the Plaintiffs from making further complaints about bullying and to refuse to take action against the accused students in retaliation for the Plaintiffs' "demands" that SPSG implement their daughter's IEP.

83. A.B. suffered intense anxiety from the bullying episodes described above, which interfered with her ability to absorb information, focus on and produce her best work at school during a critical time for her college applications; she was socially isolated and deeply distressed; she found it nearly impossible to make new friends at clique ridden SPSG because of the rumors spread by the Defendant Students that she was "damaged goods" and because the Defendant Students continued to interfere with her new relationships and with her participation in school events such as prom and the school failed to take adequate steps to prevent or mitigate those consequences.

84. A.B. missed more than twenty days of school as a result of bullying, after having previously had an almost perfect attendance record in middle school, as she did not feel safe and was unable to face her harassers. She struggled to maintain her GPA, and to continue to participate in leadership opportunities that were important to her future.

The Plaintiff Parents have suffered financial and emotional damage from the bullying, and from the Defendants' failure to accept responsibility for preventing or mitigating the damage to A.B. including physical and mental anguish from fear that their daughter would self-harm as a result of the bullying and the School's calculated indifference. Their expectation that their tuition money would translate into an educational environment in which discrimination against and bullying of their daughter "would not be tolerated" was completely destroyed and they should be made whole for the tuition money they paid and for other compensatory and punitive damages based upon those false assurances and expectations.

## COUNT I
### Interference under the Americans with Disability Act and Section 504 of the Rehabilitation Act
### (Against the Defendant, The St. Paul's School)

85. The allegations set forth in Paragraphs 1-84 are incorporated herein by reference.

86. At the time of the aforementioned conduct, the Defendant The St. Paul's School knew that the Plaintiffs' daughter was a student with a disability as defined by federal law. The Defendant also knew that Ms. Bennett was advocating for her daughter so that she would be protected from bullying based, at least in part, on her qualifying disability and which excacerbated her disability and interfered with her ability to learn and participate in school sponsored activities relevant to her educational goals.

87. Having the aforesaid knowledge that Ms. Bennett was advocating for her daughter to be accommodated for her disability and protected from bullying based in part on her disability and which excacerbated her disability interfering with her ability to learn and to participate in school sponsored activites, the Defendant intimidated, threatened and interfered with Ms. Bennett on account of her having aided an individual, *i.e.*, her daughter, in the enjoyment of a right granted or protected by the aforementioned Act. 42 U.S.C. §12203(b) and Section 504 of the Rehabilitiaton Act. In making the statements that Ms. Bennett was interfering with the healing of the bullies who had targeted her daughter, Mr. Genthe intended to threaten Ms. Bennett's with her daughter's expulsion from SPSG under a clause in the Enrollment Contract which permits the School "to require the withdrawal of any student if it determines withdrawal to be in the best interests of the Student or the School. Reasons may include but are not limited to  . . .behavior by the parent, guardian or Student that is detrimental or disruptive to the School." Those statements were reasonably calculated to interfere with the exercise or enjoyment of ADA rights and rights under Section 504 of the Rehabilitation Act made with intent to discriminate.

88. As a result of the  Defendants' interference with Ms. Bennett's exercise of rights under the ADA and Section 504 of the Rehabilitation Act the Plaintiff is entitled to the costs for this action, attorney's fees and **seeks** all other relief to which Plaintiffs may be legally entitled.

**COUNT II**
**Interference under the Americans with Disability Act and Section 504 of the Rehabilitation Act**
**(Against the Defendant, The St. Paul's School)**

89. The allegations set forth in Paragraphs 1-84 are incorporated herein by reference.

90. At the time of the aforementioned conduct, the Defendant The St. Paul's School knew that the Plaintiffs' daughter was a student with a disability as defined by federal law. The Defendant also knew that Ms. Bennett was advocating for her daughter so that she would be receive accommodations for her disability that could enable her to take additional AP courses and help her attain admission at an good college. Because Ms. Bennett advocated for her daughter, SPSG employees, including but not limited to Christina Ferrens, the head of SPSG, decided to retaliate against Ms. Bennett by refusing to investigate well-founded allegations of bullying, refusing to require an employee of The St. Paul's School to disclose what she knew about bullying and cyberbullying, and refusing to take necessary steps to protect Plaintiffs' daughter from bullying which excacerbated A.B.'s disability and interfered with her ability to learn and participate in school sponsored activities relevant to her educational goals.

91. Having the aforesaid knowledge that Ms. Bennett was advocating for her daughter to be accommodated for her disability and protected from bullying based in part on her disability and which excacerbated her disability interfering with her ability to learn and to participate in school sponsored activites, the Defendant retaliated against, intimidated, threatened and interfered with Ms. Bennett on account of her having aided an individual, *i.e.*, her daughter, in the enjoyment of a right granted or protected by the aforementioned Act. 42 U.S.C. §12203(b) and Section 504 of

the Rehabilitiaton Act. These actions were reasonably calculated to interfere with the exercise or enjoyment of ADA rights and rights under Section 504 of the Rehabilitation Act made with intent to discriminate.

92. As a result of the  Defendants' interference with Ms. Bennett's exercise of rights under the ADA and Section 504 of the Rehabilitation Act the Plaintiff is entitled to the costs for this action, attorney's fees and seeks all other relief to which Plaintiffs may be legally entitled.

**COUNT III**
**(Breach of Contract – Enrollment Contract)**
**(Against the Defendant SPSG)**

93. The allegations set forth in Paragraphs 1 to 84 are incorporated herein by reference.

94. The Defendant School  materially breached the terms its enrollment contract (renewed annually) with the Plaintiffs and engaged in actions which breached the contract's covenant of good faith and fair dealing.

95. The Plaintiffs have complied with all requirements of the enrollment contract, including but not limited to promptly paying the full tuition demanded by the school despite the Defendant School's material breaches and ensuring that A.B. was at all times in compliance with the enrollment contract and Student-Parent Handbook.

96. The Plaintiff's payment of tuition was based upon the expectation that the Defendants would comply with the terms of the enrollment contract and, *inter alia*,  protect A.B. from all physical and emotional harm, and provide her with a learning environment free from harassment and discrimination based upon disability and  that expectation was destroyed by the Defendants' actions.

97. As a proximate result of that breach of contract, the Plaintiffs have suffered significant damages as described above.

98.     The Plaintiffs demand judgment against SPSG for compensatory damages, interest, the costs of this lawsuit, attorney's fees and punitive damages based upon the School's actual or implied malice, all other relief to which Plaintiffs may be legally entitled, in amounts to be determined at trial, including but not limited to an order that SPSG be permanently enjoined and restrained from making false oral or written statements or promises that it provides an environment of "absolute love" or a "supportive sisterhood" and that it "does not tolerate physical or emotional harm" to its students.

### COUNT IV
### (Intentional Misrepresentation)
### (Against the Defendant SPSG)

99. The allegations set forth in Paragraphs 1 to 84 are incorporated herein by reference.

100.     The Defendant SPSG's course of conduct toward the Plaintiffs was characterized by knowing false and fraudulent misrepresentations as set forth above, including but not limited to statements that the Plaintiffs' daughter A.B. would be educated in an environment of absolute love, free from harassment and bullying and that any physical and emotional injury to her would not be tolerated.

101.     The Plaintiff Parents selected SPSG for their child's high school education in reliance upon SPSG's statements, both in its written materials, inlcuding in its promotional materials, its website, its enrollment contract, Handbook and its AUP, and statements made orally during their school selection process, that physical and emotional injury from bullying, harassment and/or intimidation would not be tolerated at SPSG.  This was of particular concern to Plaintiffs because their daughter's learning disability and anxiety disorder made A.B. vulnerable to bullying and because she had suffered from bullying in middle school.

102.     The SPSG made the false statements alleged herein to Plaintiffs knowingly and with actual malice, that is, with actual knowledge of the falsity of their promises to protect A.B.

from physical and emotional injury, and intending thereby to deceive the Plaintiffs and to convince them falsely that SPSG maintained a school environment in which physical and emotional injury arising from bullying, harassment and/or intimidation would not be tolerated, when SPSG knew that it routinely does tolerate such behavior and ignores physical and emotional injuries to its students arising from bullying, harassment and/or intimidation.

103.    The Plaintiffs demand judgment against SPSG for compensatory damages, punitive damages, interest, the costs of this lawsuit, attorney's fees and all other relief to which Plaintiffs may be legally entitled, in amounts to be determined at trial including but not limited to an order that SPSG be permanently enjoined and restrained from making false oral or written statements or promises that it provides an environment of "absolute love" or a "supportive sisterhood" and that it "does not tolerate physical or emotional harm" to its students.

### Count VI
### (Negligent Misrepresentation)
### (Against the Defendant SPSG)

104.    The allegations set forth in Paragraphs 1 to 84 are incorporated herein by reference.

105.    The Defendant SPSG, owing a duty to the Plaintiffs, made numerous false and fraudulent statements to the Plaintiffs intending that they would rely upon them, including but not limited to statements that the Defendant SPSG would protect A.B. from harassment and physical and emotional injury, statements upon which the Plaintiffs did justifiably rely and take action in reliance from which reliance they suffered damages proximately caused by the Defendant's negligence.

106.    In consequence of the Defendant's negligence, the Plaintiffs have been damaged the exact amount of which will be proven at trial. The Plaintiffs demand judgment against SPSG for compensatory damages, interest, the costs of this lawsuit, attorney's fees, punitive damages

and all other relief to which Plaintiffs may be legally entitled, in amounts to be determined at trial including but not limited to an order that SPSG be permanently enjoined and restrained from making false oral or written statements or promises that it provides an environment of "absolute love" or a "supportive sisterhood" and that it "does not tolerate physical or emotional harm" to its students.

### Count VII
### (Fraud in the Inducement)
### (Against the Defendant SPSG)

107.     The allegations [] in paragraphs 1 to 84 are incorporated herein by reference.

108.     The Defendant SPSG knowingly made material misrepresentations of fact with respect to its zero tolerance approach to bullying, harassment and/or intimidation upon which the Plaintiff's reasonably relied, these material misrepresentations of fact were made in order to induce the Plaintiffs to enter into and renew a contract for the Defendant to educate their daughter, which the Plaintiffs would not have agreed to if they knew the Defendant's representations were false.

109.     The Plaintiff Parents selected SPSG for their child's high school education in reliance upon SPSG's statements, both in its written materials, inlcuding in its promotional materials, its website, its enrollment contract, Handbook and its AUP, and statements made orally during their school selection process, that physical and emotional injury from bullying, harassment and/or intimidation would not be tolerated at SPSG.  This was of particular concern to Plaintiffs because their daughter's learning disability and anxiety disorder made A.B. vulnerable to bullying and because she had suffered from bullying in middle school.

110.     The SPSG made the false statements alleged herein to Plaintiffs knowingly and with actual malice, that is, with actual knowledge of the falsity of their promises to protect A.B.

from physical and emotional injury, and intending thereby to deceive the Plaintiffs and to convince them falsely that SPSG maintained a school environment in which physical and emotional injury arising from bullying, harassment and/or intimidation would not be tolerated, when SPSG knew that it routinely does tolerate such behavior and ignores physical and emotional injuries to its students arising from bullying, harassment and/or intimidation.

111.     As a proximate cause of the Defendant's actions, the Plaintiffs have been damaged in an exact amount to be proven at trial. The Plaintiffs demand judgment against SPSG for compensatory damages, punitive damages, interest, the costs of this lawsuit, attorney's fees and all other relief to which Plaintiffs may be legally entitled, in amounts to be determined at trial including but not limited to an order that SPSG be permanently enjoined and restrained from making false oral or written statements or promises that it provides an environment of "absolute love" or a "supportive sisterhood" and that it "does not tolerate physical or emotional harm" to its students.

**Count VIII**
**(Detrimental Reliance)**
**(Against the Defendant SPSG)**

112.     The allegations set forth in Paragraphs 1 to 84 are incorporated herein by reference.

113.     The Defendant SPSG having made clear and definite promises to the Plaintiffs that physical and emotional injury to the Plaintiffs' daughter would not be tolerated, promises upon which the Plaintiffs were entitled to and did reasonably rely and which the Defendant SPSG knew would induce reliance and action, caused a detriment to the Plaintiffs by failing to fulfill that promise.

114.     As a result of that promise, the Plaintiffs have been damaged in an amount to be determined at trial. The Plaintiffs demand judgment against the Defendant SPSG for

compensatory damages, interest, the costs of this lawsuit, attorney's fees and all other relief to which Plaintiffs may be legally entitled, in amounts to be determined at trial including but not limited to an order that SPSG be permanently enjoined and restrained from making false oral or written statements or promises that it provides an environment of "absolute love" or a "supportive sisterhood" and that it "does not tolerate physical or emotional harm" to its students.

**Count IX**
**Tortious Interference With Contract**
**(Against the Defendants Katherine Porter, Sara Porter, Greta Heck, Judy Heck, Ereni Malfa, Christina Ferrens, and Sabrina Murray)**

115.      The allegations set forth in Paragraphs 1-84 are incorporated herein by reference.

116.      Prior to engaging in the aforementioned conduct, the Defendants Katherine Porter, Sara Porter, Greta Heck, Judy Heck, Ereni Malfa, Chistina Ferrens and Sabrina Murray were fully aware that the Plaintiffs had a contract with SPSG which required the school to ensure that the Plaintiffs' daughter was not physically or emotionally injured.  More particularly, each of the aforesaid Defendants had actual knowledge of the Student-Parent Handbook incorporated into SPSG's enrollment contracts and each knew of the school's policy purportedly prohibiting bullying, harassment and/or intimidation of students at SPSG, and as to the Defendants Sara Porter, Ereni Malfa, Christina Ferrens and Sabrina Murray knew that they were obligated by virtue of their status as employees of SPSG to report any infromation they knew about bullying "as soon as possible."

117.      Having the aforesaid knowledge of the contract between the Plaintiffs and SPSG, each of the Defendants nonetheless engaged in the unlawful and tortious conduct alleged herein with design and intent to interfere with the contractual rights of the Plaintiffs and to destroy the Plaintiffs' legitimate expectations with respect to that contract, namely that SPSG would maintain

a school environment free from bullying, harassment and intimidation, and that physical and emotional injury to SPSG's students would be both prevented and not tolerated.

118.     The Defendants'-- Katherine Porter, Sara Porter, Greta Heck, Judy Heck's, Ereni Malfa's, Christina Ferrens' and Sabrina Murray's -- misconduct was independently wrongful because, *inter alia*, bullying, harassment and intimidation both violated SPSG's binding rules and was otherwise unlawful under state and federal law and the School's AUP agreement and the Maryland Misuse of Interative Computer Sesrvices Act prohibit the use of text messaging used in the manner described above.  Furthermore, Katherine Porter's, Sara Porter's, Greta Heck's, Judy Heck's, Ereni Malfa's, Christina Ferrens' and Sabrina Murray's conduct towards A.B. are characterized by the Defendants' evil motive, ill will, and intent to injure A.B. and Plaintiffs, and should not be tolerated in a school environment nor by any civilized society.

119.     As a proximate result of the  Defendants' wrongful and acts, the Defendants interfered with the Plaintiffs' contract with SPSG making it impossible for the Plaintiffs to receive the full benefit of that contract, and/or caused SPSG to materialy breached its contract(s) with Plaintiffs as more fully set forth above.

120.     As a proximate result of the  Defendants' wrongful and unlawful interference, the Plaintiffs have suffered significant damages, the exact amount of which will be proven at trial. The Plaintiffs demand judgment against the Defendants, Katherine Porter, Sara Porter, Greta Heck, Judy Heck, Ereni Malfa, Christina Ferrens, and Sabrina Murray, jointly and severally, for compensatory damages, punitive damages, interest, the costs of this lawsuit, attorney's fees and all other relief to which Plaintiffs may be legally entitled.

**COUNT X**
**Defamation**
**(As the the Defendants Christina Ferrens, Ereni Malfa, Sabrina Murray and the Defendant The St. Paul's Schools)**

121.     The allegations set forth in Paragraphs 1-84 are incorporated herein by reference.

122.     At the time of the aforementioned conduct, the Defendants Christina Ferrens, Ereni Malfa, Sabrina Murray and The St. Paul's Schools were fully aware that Ms. Bennett was an attorney and that Mr. Fitch is a sworn law enforcement agent for the Department of Defense, in a position that requires him to pass background investigations. The Defendants made statements that called Ms. Bennett's and Mr. Fitch's honesty into question, *i.e.*, stated that their claims that her daughter had been bullied by Kate Porter, Greta Heck, Niya Robinson and Br'ael Taylor were false. The Defendants communicated those statements, or caused the communication of those statements, to third parties, including, at a minimum, Kelley, Norbert and Niya Robinson. The statement that Ms. Bennett, an attorney, and Mr. Fitch, a sworn law enforcement officer were making false claims tended to expose them to public scorn, hatred contempt or ridicule to a third person who reasonably recognized the statements as defamatory and could interefere with their continued employment and their reputation for honesty in carrying out the duties attendant upon their professions. The Defendants knew or reasonably should have known that this statement was false, because, among other reasons, Mrs. Porter had admitted that her daughter had bullied the Plaintiffs' daughter, was at fault in communicating the statement and acted with actual malice and/or negligence. The Defendants' statement was not privileged.

123.     Having the aforesaid knowledge that Ms. Bennett was a practicing lawyer and that Mr. Fitch is a law enforcement officer, the statement that they had made false claims would clearly impute to them some incapacity or lack of due qualification and would disqualify them in their chosen professions and render them less fit to fulfill the duties incident to their professions and would hurt or impair their trade or livelihood, the Defendants' statements are actionable *per se*.

124.      As a proximate result of the  Defendants' defamatory claims made with actual malice, the Plaintiffs' are entitled to actual and/or punitive damages, the exact amount of which will be proven at trial. The Plaintiffs demand judgment against the Defendants Christina Ferrens, Ereni Malfa, Sabrina Murray and The St. Paul's Schools, jointly and severally, for compensatory damages, punitive damages, interest, the costs of this lawsuit, attorney's fees and all other relief to which Plaintiffs may be legally entitled.

## COUNT XI
### (Breach of Contract – Acceptable Use Policy)
### (Against all Defendants)

125.      The allegations set forth in Paragraphs 1 to 84 are incorporated herein by reference.

126.      The Defendants materially breached the terms of the SPSG Acceptable Use Policy which constituted a contract (renewed annually) with the Plaintiffs and/or a contract between the Defendants and the School as to which the Plaintiffs' and their daughter were third party beneficiaries, and engaged in actions which breached the contract's covenant of good faith and fair dealing.

127.      The Plaintiffs have complied with all requirements of the AUP agreement, including but not limited to immediately reporting their own daughter's breach of the policy to the School and removing her single offensive post and ensuring that A.B. was at all other times in compliance with the AUP.

128.      The Plaintiff's payment of tuition was based upon the expectation that the Defendants would comply with the terms of the AUP contract and, *inter alia*,  protect A.B. from cyberbullying, including the use of inappropriate language and profanity and bullying, derogatory, harassing, or intimidating language in text mesmsmages.

28

129.      As a proximate result of that breach of contract, the Plaintiffs have suffered significant damages as described above.

130.      The Plaintiffs demand judgment against all Defendants for compensatory damages, interest, punitive damages and the costs of this lawsuit, attorney's fees and all other relief to which Plaintiffs may be legally entitled, in amounts to be determined at trial.

### Count XII
### Tortious Interference With Contract -AUP
### (Against the Defendants Katherine Porter, Sara Porter, Greta Heck, Judy Heck, Ereni Malfa, Christina Ferrens, and Sabrina Murray)

131.      The allegations set forth in Paragraphs 1-84 are incorporated herein by reference.

132.      Prior to engaging in the aforementioned conduct, the Defendants Katherine Porter, Sara Porter, Greta Heck, Judy Heck, Ereni Malfa, Chistina Ferrens and Sabrina Murray were fully aware that the Plaintiffs had a contract with SPSG, the Acceptable Use Policy agreement, which prohibited students from using their cell phones on or off campus to send bullying, derogatory, harassing or intimidating messages or to send messages using inappropriate language or otherwise not in keeping with the school's mission. The Defendants also knew that the AUP agreement required students to report violations of the Acceptable Use Policy immediately to an SPSG faculty or staff member. The Defendants knew that there were text messages among the Student Defendants and their friends about A.B. that violated the AUP agreement and which were required to be reported, but none of them reported the violation or required the reporting of the violations.

133.      Having the aforesaid knowledge of the AUP agreement between the Plaintiffs and SPSG, each of the Defendants nonetheless engaged in conduct alleged herein with design and intent to interfere with the contractual rights of the Plaintiffs and to destroy the Plaintiffs' legitimate expectations with respect to that agreement, namely that SPSG would prohibit inappropriate online interaction.

134.     The Defendants'-- Katherine Porter, Sara Porter, Greta Heck, Judy Heck's, Ereni Malfa's, Christina Ferrens' and Sabrina Murray's -- misconduct was independently wrongful because, *inter alia*, cyberbullying, and online harassment and intimidation violates Maryland's Misuse of Interactive Computer Services Act and is otherwise unlawful under state and federal law.  Furthermore, Katherine Porter's, Sara Porter's, Greta Heck's, Judy Heck's, Ereni Malfa's, Christina Ferrens' and Sabrina Murray's conduct towards A.B. in failing to protect her from cyberbullying are characterized by the Defendants' evil motive, ill will, and intent to injure A.B. and Plaintiffs, and should not be tolerated in a school environment nor by any civilized society.

135.     As a proximate result of the  Defendants' wrongful and acts the Defendants prevented the Plaintiffs from receiving the full benefit of the AUP agreement, and/or caused SPSG to materialy breached its contract(s) with Plaintiffs as more fully set forth above.

136.     As a proximate result of the  Defendants' wrongful and unlawful interference, the Plaintiffs have suffered significant damages, the exact amount of which will be proven at trial. The Plaintiffs demand judgment against the Defendants, Katherine Porter, Sara Porter, Greta Heck, Judy Heck, Ereni Malfa, Christina Ferrens, and Sabrina Murray, jointly and severally, for compensatory damages, punitive damages, interest, the costs of this lawsuit, attorney's fees and all other relief to which Plaintiffs may be legally entitled.

### Count XIII
### Conspiracy to Tortiously Interfere With Contract -AUP
### (Against the Defendants Katherine Porter, Sara Porter, Greta Heck, Judy Heck, Ereni Malfa, Christina Ferrens and Sabrina Murray, )

137.     The allegations set forth in Paragraphs 1-84 are incorporated herein by reference.

138.     Prior to engaging in the aforementioned conduct, the Defendants Katherine Porter, Sara Porter, Greta Heck, Judy Heck, Ereni Malfa, Chistina Ferrens and Sabrina Murray were fully aware that the Plaintiffs had a contract with SPSG, the Acceptable Use Policy, which prohibited

students from using their cell phones on or off campus to send bullying, derogatory, harassing or intimidating messages or to send messages using inappropriate language not in keeping with the school's mission. The Defendants also knew that the AUP contract required students to report violations of the Acceptable Use Policy immediately to an SPSG faculty or staff member. because, *inter alia*, cyberbullying, and online harassment and intimidation violates Maryland's Misuse of Interactive Computer Services Act The Defendants knew about the derogatory text messages described above, and entered into an unlawful agreement and conspiracy not to report those messages to SPSG so that the Plaintiffs would not learn of their existence.

139.     Having the aforesaid knowledge of the AUP agreement between the Plaintiffs and SPSG, each of the Defendants entered into an unlawful agreement and conspired together to engage in the unlawful and tortious conduct alleged herein by design and with an evil motive and intent, to interfere with the contractual rights of the Plaintiffs and to destroy the Plaintiffs' legitimate expectations with respect to that agreement, namely that SPSG would prohibit inappropriate online interaction.

140.     The Defendants'-- Katherine Porter, Sara Porter, Greta Heck, Judy Heck's, Ereni Malfa's, Christina Ferrens' and Sabrina Murray's -- misconduct was independently wrongful because, *inter alia*, cyberbullying, and online harassment and intimidation violates Maryland's Misuse of Interactive Computer Services Act and is otherwise unlawful under state and federal law.  Furthermore, Katherine Porter's, Sara Porter's, Greta Heck's, Judy Heck's, Ereni Malfa's, Christina Ferrens' and Sabrina Murray's conduct towards A.B. in failing to protect her from cyberbullying are characterized by the Defendants' evil motive, ill will, and intent to injure A.B. and Plaintiffs, and should not be tolerated in a school environment nor by any civilized society.

141.     As a proximate result of the  Defendants' wrongful and acts and conspiracy, the Defendants interfered with the Plaintiffs' AUP agreement with SPSG making it impossible for the Plaintiffs to receive the full benefit of that contract, and/or caused SPSG to materially breached its contract(s) with Plaintiffs as more fully set forth above.

142.     As a proximate result of the  Defendants' wrongful and unlawful interference, the Plaintiffs have suffered significant damages, the exact amount of which will be proven at trial. The Plaintiffs demand judgment against the Defendants, Katherine Porter, Sara Porter, Greta Heck, Judy Heck, Ereni Malfa, Christina Ferrens, and Sabrina Murray, jointly and severally, for compensatory damages, punitive damages, interest, the costs of this lawsuit, attorney's fees and all other relief to which Plaintiffs may be legally entitled.

**<u>PRAYER</u>**

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment in their favor against the Defendants, awarding equitable relief, including but not limited to an order that SPSG be permanently enjoined and restrained from making false oral or written statements or promises that it provides an environment of "absolute love" or a "supportive sisterhood" and that it "does not tolerate physical or emotional harm" to its students, compensatory damages as well as damages for pain and suffering, costs and punitive damages, along with the attorney's fees and costs incurred in this action, all together with prejudgment and post-judgment interest and such other further relief as the Court may deem appropriate.

**<u>DEMAND FOR JURY TRIAL</u>**

The Plaintiffs hereby demand trial by jury.

Respectfully submitted,


   /s/Jamie M. Bennett
Jamie M. Bennett Esq. (08468)
The Bennett Law Firm
8 Creek Side Court
Middle River, MD 21220
443-844-4629
jbennettlawfirm@gmail.com
Attorney for Plaintiffs