IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMIE M. BENNETT, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. GLR-23-1202 |
| THE ST. PAUL'S SCHOOLS, INC., et al., | * | |
| | * | |
| Defendants. | | |
| | * | |
| | *** | |

## **<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendants Christina Ferrens, Ereni Malfa,

Sabrina Murray, and The St. Paul's Schools, Inc., d.b.a. The St. Paul's School for Girls'

("SPSG"), (collectively, "St. Paul's Defendants") Motion to Dismiss, or in the alternative,

Motion for Summary Judgment (ECF No. 80) and Defendants Katherine Grace Porter and

Sara Porter's (collectively, "Porter Defendants") Motion to Dismiss (ECF No. 83). The

Motions are ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md.

2025). For the reasons outlined below, the Court will grant Defendants' Motions.

## I.    BACKGROUND

### A.    <u>Factual Background</u>[1]

Plaintiffs Jamie M. Bennett and John P. Fitch ("J. Fitch") are the mother and father

of Plaintiff Anne Bennett Fitch ("A. Fitch") who, at the time of events alleged in the Third

---

[1] Unless otherwise noted, the Court takes the following facts from the Third Amended (Consolidated) Complaint (ECF No. 77) and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

Amended Complaint, was enrolled as a high school student at The St. Paul's School for Girls ("SPSG"). (3d Am. Compl. ¶¶ 1, 12, ECF No. 77). Bennett is a licensed attorney and J. Fitch is a law enforcement officer with the Department of Defense. (Id. ¶¶ 1–2).

Defendant SPSG is an Episcopal private day school for girls, located in Brooklandville, Maryland. (Id. ¶ 4). At the time of the relevant events, Defendant Ereni Malfa was the Head of SPSG, Defendant Christina Ferrens was the Upper School Principal, and Defendant Sabrina Murray was the Dean of Students at SPSG. (Id. ¶¶ 5–7). Defendant Katherine Grace Porter ("K. Porter") was A. Fitch's classmate and her mother, Defendant Sara Porter ("S. Porter"), worked at SPSG as a high school teacher. (Id. ¶¶ 8–9).

On or about August 29, 2017, A. Fitch enrolled at SPSG as a high school freshman. (Id. ¶ 12). Shortly after starting classes, A. Fitch's parents informed the school of their daughter's anxiety disorder and learning disability. (Id. ¶ 13). In September 2017, SPSG implemented an Individualized Education Program ("IEP") to accommodate A. Fitch's needs. (Id. ¶ 14).

In the fall of 2019, the beginning of A. Fitch's junior year, A. Fitch had a falling out with K. Porter and several other students. (See id. ¶ 113). Plaintiffs allege that, at the direction of K. Porter, students began to harass and bully A. Fitch by mimicking her gestures and gait, making unwelcome comments about her weight, exchanging malicious text messages, and excluding A. Fitch from social events, among other things. (Id. ¶¶ 114–18).

In January 2020, Plaintiffs complained to SPSG about the bullying described above. (Id. ¶ 25). In February 2020, Defendant Murray affirmed that the school would investigate

2

Plaintiffs' concerns "if Plaintiffs filed a formal complaint" with the school. (See id. ¶ 31). No later than March 10, 2020, Plaintiffs filed formal complaints with SPSG against the students who bullied A. Fitch. (Id. ¶ 30).

On May 7, 2020, SPSG informed Plaintiffs via email that it concluded its investigation of Plaintiffs' complaints and determined that no bullying occurred. (See id. ¶¶ 50, 56). Plaintiffs replied to SPSG's email that same day with a request that the school modify A. Fitch's IEP, explaining that the accused students taunted A. Fitch because of her "known disability of social anxiety." (Id. ¶ 66).[2] Plaintiffs requested that SPSG remove the alleged bullies from A. Fitch's classes to protect her from retaliation. (Id. ¶ 67). In response, SPSG proposed separating A. Fitch from the alleged bullies by moving her to a different class. (Id. ¶ 87).

Plaintiffs also contacted Geoff Genthe, SPSG's attorney, to explain the impact the bullying had on A. Fitch and to express their desire to sue SPSG. (Id. ¶¶ 59, 60). Genthe, however, suggested that "what happened to Ms. Fitch was [the] result of 'social dynamics,'" not bullying and that Bennett was interfering with the "healing" of the alleged bullies in pursuing their complaint further. (Id. ¶ 60). According to Plaintiffs, SPSG "falsely represented it had gone through the disciplinary process with the accused students," as the "accused students were never interviewed about the allegations" until after the school finished its investigation. (Id. ¶ 56).

---

[2] On May 19, 2020, Plaintiffs renewed their request for a modified IEP. (3d Am. Compl. ¶ 71).

In response to Plaintiffs' bullying accusations against K. Porter, Plaintiffs received correspondence, on May 14, 2020, from S. Porter's attorney, Thomas Whiteford. (Id. ¶ 69). Plaintiffs allege that Whiteford wrote, "I am not quite sure what the goal of your campaign is at this time. The likely outcome will be more unpleasantness for all involved. Not sure how that helps your daughter's senior experience." (Id.).

Plaintiffs further contend that SPSG created a hostile environrment by telling the families of the accused students and Genthe that Plaintiffs' bullying claims were untrue, making Plaintiffs feel unwelcome at school events, excluding A. Fitch's mother from participating in the annual school book sale, and refusing to protect A. Fitch. (Id. ¶¶ 73–75, 83, 175).

Although A. Fitch was able to graduate from SPSG in June 2021 (see id. ¶ 39), Plaintiffs assert that she missed over twenty days of school and struggled to maintain her GPA and participate in leadership opportunities as result of bullying (id. ¶ 166). Plaintiffs further contend that SPSG's calculated indifference towards their bullying complaints caused them to suffer financial and emotional harm. (Id. ¶ 167).

**B.    Procedural History**

Plaintiffs have filed three lawsuits based on these events. On July 20, 2021, they filed Bennett v. Porter, No. C-03-CV-21-2335 in the Baltimore County Circuit Court against St. Paul's Defendants, Porter Defendants, and various SPSG students. (3d Am. Compl. ¶ 138). Next, A. Fitch's parents, Bennett and J. Fitch, filed a complaint with this Court on May 7, 2023 (ECF No. 2), which they amended on May 29, 2023 (ECF No. 18). On March 26, 2024, the Court issued an Order abstaining from exercising jurisdiction over

the matter pending the parallel state court action. (Mar. 26, 2024 Order at 1, ECF No. 54).[3]

Five days after this Court's Order, A. Fitch filed a separate complaint, which Judge Gallagher dismissed without prejudice on December 11, 2024. Dec. 11, 2024 Order at 1, Fitch v. The St. Paul's Sch. for Girls, No. SAG-24-938 (D.Md. Dec. 11, 2024) (ECF No. 52).

On March 26, 2024, Bennett and J. Fitch filed an appeal of this Court's March 26, 2024 Order with the United States Court of Appeals for the Fourth Circuit. (ECF No. 55). On April 17, 2025, the Fourth Circuit vacated the Court's March 26, 2024 Order, remanding the case in light of the state court dismissal, as there were no longer parallel proceedings. (USCA Order at 2–3, ECF No. 60). This Court issued an Order reopening the case on April 22, 2025. (ECF No. 62).

On May 11, 2025, Bennett and J. Fitch filed a motion to consolidate their case with their daughter A. Fitch's case (ECF No. 66), which this Court granted on November 3, 2025 (ECF No. 75). On November 7, 2025, A. Fitch and her parents filed the instant Third Amended Complaint against St. Paul's Defendants and Porter Defendants, alleging two federal claims, retaliation and a hostile school environment under Section 504 of the Rehabilitation Act (Counts I, II), and various state law claims, including breach of contract (Counts III, VI), tortious interference with contract (Counts IV, VII), defamation (Count V), and negligent supervision and training (Counts VIII, IX). (3d Am. Compl. at 32–44). Plaintiffs seek compensatory and punitive damages, attorneys' fees, and costs. (Id. at 44).

---

[3] Citations to the record refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

St. Paul's Defendants filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment on December 12, 2025. (ECF No. 80). And Porter Defendants filed their Motion to Dismiss on December 13, 2025. (ECF No. 83). Plaintiffs filed an Opposition to both Motions on January 9, 2026. (ECF No. 95). On January 23, 2026, St. Paul's Defendants filed a Reply. (ECF No. 98). To date, Porter Defendants have not filed a Reply.

## II.    DISCUSSION

### A.    Standards of Review

St. Paul's Defendants Motion, styled as a motion to dismiss or, alternatively, for summary judgment, implicates the Court's discretion to determine which standard applies. See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) of the Federal Rules of Civil Procedure provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)). Because the Court can resolve the Motion without considering St. Paul's Defendants' extra-pleading material, the

6

Court, in its discretion, will construe the Motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim.

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. See Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir.

2005) (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, <u>see</u> <u>United Black Firefighters v. Hirst</u>, 604 F.2d 844, 847 (4th Cir. 1979) (finding dismissal of complaint proper because plaintiffs' "conclusory allegations" of discrimination were unsupported by "reference to particular acts, practices, or policies"), or legal conclusions couched as factual allegations, <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555).

**B.    Analysis**

Plaintiffs' Third Amended Complaint presents two federal claims against St. Paul's Defendants for violations of Section 504 of the Rehabilitation Act (Counts I & II), along with a variety of State law claims against all Defendants (Counts III–IX). (3d Am. Compl. at 32–44). As discussed more fully below, the Court finds Plaintiffs' federal claims are subject to dismissal and will, therefore, decline to assert supplemental jurisdiction over the remaining State law claims.

**1.    Count I**

Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).[4] To

---

[4] Plaintiffs assert that SPSG is subject to the Rehabilitation Act (the "Act") due to its receipt of a federal loan under the Paycheck Protection Program from the Small Business Administration, on or about April 4, 2020 through September 2021. (3d Am. Compl. ¶ 15). In circumstances like these, when a private institution that otherwise would not be required to abide by the Act receives federal financial assistance, courts have found

assert a claim for retaliation under the Rehabilitation Act, a plaintiff must allege that: (1) she engaged in a protected activity, such as submitting a request for disability accommodation; (2) the defendant took an adverse action against her; and (3) a causal connection exists between the protected activity and the adverse action. See Braswell v. Bd. of Educ. of Prince George's Cnty., No. AW-12-02434, 2012 WL 5511005, at *3 (D.Md. Nov. 13, 2012); see also D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012) (applying standard to student's retaliation claim in the education context).

For a retaliation claim to be actionable, the challenged conduct must be "materially adverse," or conduct that would dissuade a reasonable person from pursuing their claim. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67–68 (2006). As the Burlington Court explained, the anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Id. at 67.[5] For example, depriving a student of a certain academic or athletic opportunity or issuing a reprimand with collateral consequences may be sufficiently injurious to constitute a materially

the private entity subject to the Act "only during the periods [in] which the [federal] funds [were] accepted." Dickerson v. Grant Leading Tech., LLC, No. CV 23-867 (RDM), 2024 WL 4803920, at *5 (D.D.C. Nov. 15, 2024) (quoting Koslow v. Pennsylvania, 302 F.3d 161, 166 n.3 (3d Cir. 2002) (collecting cases). Applying these principles, the Court finds only those events that occurred between April 4, 2020 and September 30, 2021 relevant for the purposes of Plaintiffs' Rehabilitation Act claims. See DiPietro v. Archbishop Wood High Sch., 711 F.Supp.3d 488, 493 (E.D.Pa. 2024) (concluding that "even if a PPP loan created obligations under the [Rehabilitation Act], those obligations would cease when the government forgives the loan").

[5] Although Burlington discussed the anti-retaliation provision of Title VII, courts apply the same retaliation framework when analyzing claims under the Rehabilitation Act. See Amendola v. Henderson, 182 F.Supp.2d 263, 276 (E.D.N.Y.2001) ("The Rehabilitation Act expressly adopts the anti-retaliation provisions of Title VII [of the Civil Rights Act of 1964]." (citing 29 U.S.C. § 794a)).

adverse action within the education context. See Wright v. Carroll Cnty. Bd. of Educ., No. ELH-11-3103, 2013 WL 4525309, at *15 (D.Md. Aug. 26, 2013) (explaining that deliberate indifference to harassment that deprived a disabled student of access to school resources or opportunities would be actionable under Section 504). "Petty slights or minor annoyances," however, are not actionable. Burlington, 548 U.S. at 68; see also Hinton v. Va. Union Univ., 185 F.Supp.3d 807, 832 (E.D.Va. 2016) ("[R]eprimands without collateral consequences are akin to non-actionable snubbing, antipathy, and petty slights.").

As to the causal connection element, under Section 504, plaintiffs must allege facts that plausibly demonstrate they suffered discrimination "solely by reason of [plaintiffs'] disability." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 n.17 (4th Cir. 2005) (quoting Baird ex rel. Baird v. Rose, 192 F.3d 462, 469–70 (4th Cir. 1999)).

Here, there is no real dispute that Plaintiffs' request to modify A. Fitch's IEP on May 7, 2020 and May 19, 2020 constitutes a protected activity under the Rehabilitation Act. (3d Am. Compl. ¶¶ 65, 71); Fitch v. St. Paul's Sch. for Girls, No. SAG-24-00938, 2024 WL 5075201, at *5 (D.Md. Dec. 11, 2024) (noting that a request "for a disability accommodation in an educational setting" is an example of a protected activity). In response to their protected activity, Plaintiffs assert that St. Paul's Defendants retaliated by: (1) stating that Plaintiffs were interfering with the "healing" of the alleged bullies in pursuing their complaint beyond SPSG's internal process (3d Am. Compl. ¶¶ 60, 174); (2) commenting that Plaintiffs' bullying complaints "were without foundation" (id. ¶ 175); and (3) failing to properly investigate Plaintiffs' bullying complaints (id. ¶ 177); (Pls.' Opp'n

10

Defs.' Mots. Dismiss at 19, ECF No. 95). The Court evaluates the challenged conduct below.

Turning first to the statement that Bennett was interfering with the healing of the bullies, the Court finds that this statement was not materially adverse and, therefore, does not support Plaintiffs' retaliation claim. Specifically, Plaintiffs allege that on May 7, 2020, after receiving the email from SPSG closing the bullying investigation, Bennett, a licensed attorney, spoke with SPSG's attorney, Genthe, and broached the topic of suing SPSG. (See 3d Am. Compl. ¶¶ 57–60). In response, Genthe advised Bennett that "she had no basis for suing SPSG" and "suggested that [] Bennett was interfering with the 'healing' of the bullies." (Id. ¶ 60). According to Plaintiffs, Genthe's comment was a veiled threat to expel A. Fitch from SPSG. (Id. ¶ 61). The Court is unpersuaded by this argument. To be sure, as Plaintiffs suggest, the mere threat of harm can be sufficiently adverse to support a retaliation claim "if the threat is capable of deterring a person of ordinary firmness from engaging in protected conduct." Hill v. Lappin, 630 F.3d 468, 474 (6th Cir. 2010). But see Stevens v. Clarke, No. 7:21-CV-00570, 2022 WL 2757637, at *6 (W.D.Va. July 14, 2022) ("[V]erbal threats of retaliation, unless they are sufficiently specific and direct, generally do not constitute an adverse action for purposes of a retaliation claim."). Without more, however, the facts as alleged do not permit the Court to infer that any such threat existed. Further, as other courts have noted, "an attorney's 'blunt rendering of an honest but negative assessment of [a party's] chances at trial . . . does not constitute improper behavior." United States v. Albarran, 943 F.3d 106, 124 (2d Cir. 2019) (citation modified). As such, the Court finds that Genthe's remarks, though insensitive, amount to no more than

11

a "petty slight or minor annoyance" and are insufficient to support Plaintiffs' retaliation claim. Burlington, 548 U.S. at 68.[6]

Next, Plaintiffs allege that St. Paul's Defendants retaliated against Bennett's protected activity by falsely stating that their bullying allegations lacked any foundation. (3d Am. Compl. ¶¶ 83, 175). According to Plaintiffs, these comments were made by SPSG to Genthe and the subjects of the investigation, as a summary of SPSG's investigation into the alleged bullying. (See id.). While Plaintiffs are entitled to disagree with the findings of SPSG's investigation, "disagreement with the outcome of an investigation is not sufficient to establish a claim of retaliation." Ballinger v. Bd. of Educ. for Prince George's Cnty., No. GJH-15-3769, 2017 WL 6759379, at *6 (D.Md. Dec. 29, 2017). As such, the Court finds that SPSG's remarks that Plaintiffs' bullying complaint lacked any foundation do not amount to materially adverse conduct. Moreover, even if SPSG's remarks were materially adverse, Plaintiffs fail to allege any facts that would allow the Court to infer that the alleged false statements were motivated by Plaintiffs' request for an IEP modification or Plaintiffs' disability; thus, the Court finds SPSG's statements insufficient to state a claim under

---

[6] In this same vein, Plaintiffs also attribute remarks made by S. Porter's attorney, Thomas Whiteford, to SPSG where Whiteford expressed uncertainty about Bennett's goals and suggested that continued action would likely result in "unpleasantness for all involved" and would not be helpful to A. Fitch's "senior experience." (3d Am. Compl. ¶ 69). As St. Paul's Defendants point out, and Plaintiffs concede, Whiteford represented S. Porter—not SPSG. (Id.; St. Paul's Defs.' Mem. P & A Mot. Dismiss, alternatively, Mot. Summ. J. at 14, ECF No. 81). Because Plaintiffs fail to plead any facts that allow the Court to infer an agency relationship between Whiteford and SPSG, the Court will not attribute Whiteford's comments to SPSG. In any event, to the extent Plaintiffs interpret Whiteford's statements as a threat to make A. Fitch's senior year "unpleasant," the Court finds that they too are unactionable for the reasons stated above.

Section 504. See Britt v. DeJoy, No. 20-1620, 2022 WL 4280495, at *2 (4th Cir. Sep. 14, 2022) (Plaintiff "failed to plausibly state a claim under [the Rehabilitation Act] as she did not allege facts demonstrating that she was dismissed 'solely by reason of her . . . disability.' . . . [S]he offers nothing more than mere speculation that this occurred due to her disability.").

Finally, Plaintiffs assert that SPSG retaliated by failing to properly investigate and protect A. Fitch from bullying. (3d Am. Compl. ¶¶ 51, 73). Although styled as a retaliation claim, this allegation implicates a different theory of liability under Section 504, referred to as a Davis-type claim or a deliberate indifference claim. See Wright, 2013 WL 4525309, at *15. Drawing on the Supreme Court's decision in Davis Next Friend LaShonda D. v. Monroe County Board of Education, 526 U.S. 629 (1999), courts have found "a school district's deliberate indifference to pervasive, severe disability-based harassment that effectively deprived a disabled student of access to the school's resources and opportunities . . . actionable under Section 504 and Title II [of the ADA]." K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist., 381 F.Supp.2d 343, 360 (S.D.N.Y. 2005); see, e.g., Wright, 2013 WL 4525309, at *15 (explaining and applying Davis to Section 504 claim). Critically, to assert a deliberate indifference claim under Section 504, Plaintiffs must allege, among other things, that the disability-based harassment "was sufficiently severe or pervasive that it altered the condition of [A. Fitch's] education" and that SPSG "was deliberately indifferent to the harassment." Wright, 2013 WL 4525309, at *16. Moreover, a "school district is not deliberately indifferent simply because the measures it takes are

13

ultimately ineffective in stopping harassment." <u>D.A. v. Meridian Joint Sch. Dist. No. 2</u>, 289 F.R.D. 614, 630 (D.Idaho 2013).

Here, the Court finds that Plaintiffs fail to allege conduct that shows deliberate indifference on the part of SPSG. First, Plaintiffs assert that after notifying SPSG of the alleged bullying, SPSG instructed Plaintiffs to file a formal complaint with the school, on or about February 25, 2020 (<u>see</u> 3d Am. Compl. ¶¶ 30–31), which Plaintiffs submitted no later than March 10, 2020 (<u>id.</u> ¶ 32). According to Plaintiffs, SPSG assured Plaintiffs it would investigate the complaints in accordance with the school's procedures. (<u>Id.</u> ¶ 31). On May 7, 2020, SPSG emailed Plaintiffs the outcome of the school's investigation, concluding that no bullying took place. (<u>See</u> <u>id.</u> ¶ 56). While Plaintiffs dispute that SPSG conducted a proper investigation (<u>id.</u> ¶ 54), they do, however, concede that SPSG took action to separate A. Fitch from the bullies by moving A. Fitch to different classes (<u>id.</u> ¶ 87). These facts stand in stark contrast to other cases where plaintiffs adequately alleged deliberate indifference. <u>See, e.g.</u>, <u>K.M. ex rel. D.G.</u>, 381 F.Supp.2d at 361 (finding deliberate indifference under Section 504 when plaintiff alleged no action taken by school to protect disabled child from two years of verbal and physical attacks at school); <u>D.A</u>, 289 F.R.D. at 631 (same). In the context of peer-on-peer harassment, when considering deliberate indifference, the focus is on "the conduct of the funding recipient, not the alleged harasser." <u>Williams v. Bd. of Regents of Univ. Sys. of Ga.</u>, 477 F.3d 1282, 1293 (11th Cir. 2007). And in this case, Plaintiffs' Complaint alleges that SPSG investigated Plaintiffs' bullying complaint and found insufficient evidence to warrant disciplinary action against the accused students. (<u>See</u> 3d Am. Compl. ¶ 56). Put simply, Plaintiffs' disagreement with

the results of SPSG's investigation does not give rise to a claim of deliberate indifference, let alone retaliation, under Section 504. Accordingly, the Court will grant St. Paul's Defendants' Motion to Dismiss as to Count I.

### 2.    Count II

In Count II, Plaintiffs assert that SPSG created a retaliatory hostile environment by making Plaintiffs feel unwelcome at school events, such as the June 2021 graduation, and excluding Bennett "from participating in the annual school book sale." (3d Am. Compl. ¶ 73).[7] To state a claim for retaliatory hostile environment, a plaintiff must allege virtually the same elements as a retaliation claim, except that the "material adverse element" is replaced by "subjected to severe or pervasive retaliatory harassment by a supervisor." Hinton, 185 F.Supp.3d at 840. Here, the Court finds that the pattern of conduct alleged by Plaintiffs falls far short of what is required to state a claim for a retaliatory hostile environment. As to the June 2021 graduation, Plaintiffs provide no details as to how SPSG made Plaintiffs feel unwelcome. See United Black Firefighters, 604 F.2d at 847 (explaining that the court need not accept unsupported or conclusory factual allegations). Further, Plaintiffs' claims that SPSG excluded Bennett from participating in the school book sale are insufficient for the Court to infer that Plaintiffs experienced severe or pervasive harassment. See, e.g., O'Meara v. Wormuth, No. 120CV1160RDAJFA, 2022 WL 67321, at *12 (E.D.Va. Jan. 6, 2022) ("Disinviting an employee from a staff meeting, even when

---

[7] The events described in the Court's analysis of Count I are insufficient to support a claim of retaliatory hostile environment for the reasons described above. Thus, the Court does not consider them again here.

15

combined with other conduct like refusing to communicate with the employee, does not qualify as sufficiently severe and pervasive [harassment].”). At best, the Court finds that Plaintiffs' allegations amount to no more than “petty slights” or “minor annoyances” that are not actionable under Section 504. As such, the Court will also dismiss Count II.

### 3.    Counts III–IX

As stated above, the remaining counts (Counts III–IX) present state law claims. Under 28 U.S.C. § 1367(c), a district court “may decline to exercise supplemental jurisdiction” over state claims if, inter alia, the court “has dismissed all claims over which it has original jurisdiction,” or, “in exceptional circumstances, there are other compelling reasons for declining jurisdiction.” 28 U.S.C. § 1367(c). The Supreme Court has explained that district judges should “consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.” Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). “When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction.” Id. (footnote omitted); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (“Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.”).

16

After considering the <u>Carnegie-Mellon</u> factors, this Court declines to exercise supplemental jurisdiction over Plaintiffs' pending state law claims. Given the early stage of the litigation and Maryland's strong interest in adjudicating disputes under its own laws, this Court finds that a Maryland state court will be better positioned to consider the merits of Plaintiffs' remaining claims.

### III.   CONCLUSION

For the foregoing reasons, the Court grants St. Paul's Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment (ECF No. 80), which the Court construes as a Motion to Dismiss, and grants Porter Defendants' Motion to Dismiss (ECF No. 83). A separate Order follows.

Entered this 8th day of May, 2026.


<u>       /s/       </u>
George L. Russell, III
Chief United States District Judge